UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-60494-CIV-COHN/SELTZER

APREDIEU FERTIL,

    Plaintiff,

v.

HENRY GUZMAN, KAMI FLOYD, and SCOTT
J. ISRAEL as Sheriff of Broward County,
Florida,

    Defendants.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon the parties' crossing motions for summary judgment. See DE 23, 38–40. The Court has reviewed the motions and the record in this case, and is otherwise advised in the premises. For the reasons discussed herein, the Court will grant Defendant Scott J. Israel's Corrected Motion for Summary Judgment [DE 38] and Defendant Henry Guzman's Corrected Motion for Summary Judgment [DE 39], and will deny Plaintiff's Motion for Partial Summary Judgment [DE 23] and Defendant Kami Floyd's Corrected Motion for Summary Judgment [DE 40].

### I. BACKGROUND

This action arises from the search and seizure of Plaintiff Apredieu Fertil by deputies of the Broward Sheriff's Office ("BSO"). On August 28, 2013, Fertil went to a doctor's office in Tamarac, Florida, for an appointment relating to injuries from a workplace accident. DE 1 (Complaint) ¶¶ 9–10. Fodilia Dumervil, Fertil's girlfriend, accompanied him to the office. DE 24 ¶ 47.

While Fertil and Dumervil were in the waiting room of the doctor's office, a woman called the police to report that someone at the office had stolen her cellular telephone. Id. ¶¶ 1, 3. Defendant Henry Guzman, a BSO deputy, responded to the alleged theft. DE 41 ¶ 1. When Guzman arrived at the doctor's office, the receptionist directed him to the woman who had reported the theft. Id. ¶¶ 3–4.

The woman told Guzman that she had used the office restroom with her child. Id. ¶ 5(a). When she exited the restroom, Dumervil was waiting outside. Id. ¶ 5(b). Dumervil then entered the vacant restroom. Id. ¶ 5(c). Only after Dumervil had closed the door did the woman realize that she had left her wallet and telephone on the restroom counter. Id. ¶ 5(b)–(c). The woman waited outside the restroom until Dumervil reemerged. Id. ¶ 5(c). The woman asked Dumervil whether she had seen the wallet or telephone on the counter. Id. ¶ 5(d). Dumervil responded that she had seen the wallet, but not the telephone. Id. The woman went back into the restroom and found her wallet on the counter. However, the telephone had disappeared. Id. ¶ 5(e). Returning to the waiting room, the woman saw Dumervil approach Fertil, and exchange something with him hand-to-hand. Id. ¶ 5(f). Unfortunately, the woman could not see what had been exchanged. Id. Fertil then walked out of the doctor's office, and returned a few minutes later. Id. ¶ 5(g)–(j).

After speaking with the alleged victim, Guzman questioned Dumervil about the missing telephone. Id. ¶ 6. Dumervil denied having seen the telephone. Id. When Guzman asked what Dumervil had handed to Fertil after leaving the restroom, Dumervil responded that she had given Fertil some papers. DE 24 ¶ 8.

Defendant Kami Floyd, another BSO deputy, arrived at the doctor's office around this time as Guzman's backup. Guzman and Floyd searched Dumervil, Dumervil's car, and parts of the doctor's office for the missing telephone, but to no avail. Id. ¶¶ 9–12. Guzman also asked Fertil whether he had the telephone, and Fertil responded that he did not. Id. ¶ 10.

After searching Dumervil's car, Floyd returned to the doctor's office. Floyd contends that at this point she asked Fertil whether he consented to be searched, and that Fertil agreed. DE 24 ¶ 13; DE 41 ¶ 9. However, Fertil disputes that Floyd asked for permission to search him. Instead, Fertil testified at his deposition that Floyd simply approached him and subjected him to a pat-down search. DE 45 ¶¶ 8–9, 28–30.

After the search, Fertil finished his doctor's appointment and returned to the waiting room. Guzman and Fertil then exited the doctor's office. At some point as they left the office, Guzman placed Fertil in handcuffs. DE 24 ¶¶ 70–71. Guzman testified that he handcuffed Fertil because Fertil had become agitated and demanded to leave. See DE 44 ¶ 60. Guzman contends that he thought it was necessary to handcuff Fertil to "maintain the status quo" and avoid the escalation of conflict. Id. On the other hand, Fertil and Dumervil did not testify that Fertil became agitated or sought to leave. Instead, the two testified that Guzman handcuffed Fertil while still in the doctor's office because he wanted to take Fertil outside for further questioning. DE 45 ¶ 19. The parties agree, however, that no force was used to handcuff Fertil. Id. ¶ 20.

Guzman and Fertil left the doctor's office and went to the parking lot, where Guzman placed Fertil into the back of his patrol car and questioned him further about the missing telephone. DE 24 ¶¶ 74–76; DE 41 ¶ 19. Fertil continued to deny any

3

knowledge of the alleged theft. Guzman eventually released Fertil, and performed another search of the doctor's office. During this search, the telephone was found hidden inside a paper towel dispenser in the office restroom. DE 41 ¶ 24.

Fertil commenced this suit with the filing of his Complaint on February 27, 2014. Fertil alleges broadly that his detention, search, and handcuffing by Guzman and Floyd violated his rights to be free from unreasonable search and seizure under the Fourth Amendment to the U.S. Constitution. On this basis, Fertil asserts the following claims: (1) a claim under 42 U.S.C. § 1983 against Floyd in her individual capacity for an unreasonable search and seizure in violation of the Fourth Amendment; (2) a claim under 42 U.S.C. § 1983 against Guzman in his individual capacity for an unreasonable detention in violation of the Fourth Amendment; (3) false arrest or imprisonment against Defendant Scott Israel in his official capacity as head of the BSO[1]; and (4) false arrest or imprisonment against Guzman in his individual capacity. See generally Compl. ¶¶ 37–62. Each party has now moved for summary judgment in its favor.

## II. LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this

---

[1] Because Fertil's claim names the head of the BSO as a defendant in his official capacity, the Court construes the claim as one against the BSO itself. See Cooke ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1115 (11th Cir. 2005).

4

burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

## III. DISCUSSION

Viewing the facts in the light most favorable to Fertil, the Court concludes that Guzman is entitled to summary judgment on the Section 1983 against him, based upon the doctrine of qualified immunity. Similarly, Guzman is statutorily immune from liability on Fertil's false arrest or imprisonment claim, given the absence of evidence suggesting bad faith or malice. Fertil's false arrest or imprisonment claim against the BSO also fails because it is premised upon Guzman's detention of Fertil, which was justified by a reasonable suspicion of criminal activity. However, a factual dispute over whether Fertil consented to be searched precludes Floyd's request for summary judgment on the

5

defense of consent. The Court therefore will grant summary judgment for Guzman and the BSO, but will allow this suit to proceed as against Floyd.

### A. Qualified Immunity Precludes Fertil's Section 1983 Claim Against Guzman

In his claim against Guzman under 42 U.S.C. § 1983, Fertil alleges that Guzman arrested or temporarily detained him in the absence of a reasonable justification, thereby violating his Fourth Amendment right to be free from unreasonable seizures. In his motion, Guzman counters that he is entitled to qualified immunity for having detained Fertil. See DE 39 at 3. The Court agrees with Guzman that qualified immunity shields him from Fertil's Section 1983 claim.

A government official acting within his discretionary authority—such as a BSO deputy determining whether to detain another individual—is protected by qualified immunity. See Ga. Carry Org., Inc. v. Kabler, No. 14-1125, 2014 WL 4252288 at *2 (11th Cir. Aug. 29, 2014) (per curiam). This doctrine immunizes the government official from liability unless his conduct violates clearly established federal law. Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010).

In the context of an alleged detention in violation of the Fourth Amendment, whether qualified immunity immunizes a police officer depends on whether the police officer had an arguable basis for the detention. Put another way, the question becomes whether a reasonable officer in the defendant's shoes could have had a reasonable basis for the detention, or whether it would have been clear that the detention was unlawful under the circumstances. Ga. Carry Org., Inc., 2014 WL 4252288 at *2. The defendant officer's subjective beliefs or intent are irrelevant. Jackson v. Sauls, 206 F.3d 1156, 1165 (11th Cir. 2000).

6

As a threshold matter, the foundation required to justify a detention differs depending on the nature of the detention. A police officer may arrest an individual only upon a showing of probable cause. United States v. Acosta, 363 F.3d 1141, 1145–46 (11th Cir. 2004). On the other hand, a temporary investigative stop requires only a reasonable suspicion of criminal activity. Id. In the Complaint, Fertil argues that his detention by Guzman was a full arrest, and in the alternative that it was an investigative stop. Compl. ¶¶ 44–46. It is thus left to the Court to resolve whether Fertil was arrested or subjected to an investigative stop, to determine the standard by which Guzman's conduct must be measured.

To distinguish between an investigative stop and an arrest, the Court should evaluate a detention by considering four non-exclusive factors: (1) the law-enforcement purposes served by the detention; (2) the diligence with which the police pursue the contemporaneous investigation; (3) the scope and intrusiveness of the detention; and (4) the duration of the detention. Id. at 1146. This determination is a question of law (see United States v. Diaz-Lizaraza, 981 F.2d 1216, 1220–21 (11th Cir. 1993)), and thus is proper for resolution by the Court on a motion for summary judgment. See Biscayne Cove Condo. Ass'n v. QBE Ins. Co., 951 F. Supp. 2d 1292, 1296 (S.D. Fla. 2013).

Here, Fertil was detained as part of a police search for stolen property in the area of a recently reported theft. The detention was relatively brief, and endured only as long as Guzman's and Floyd's search of the scene for the missing telephone. Indeed, Fertil was released even before the telephone was located. It is true that Guzman did handcuff Fertil and place him in the back of a patrol car. However, these more intrusive

7

aspects of the detention do not automatically convert it into a full arrest. See United States v. Gil, 204 F.3d 1347, 1350–51 (11th Cir. 2000) (per curiam). It bears noting that no force was used in detaining Fertil. In light of the purpose of the detention, its relatively short duration, and that it took place contemporaneously with the deputies' efforts to respond to a reported theft, the Court concludes that the detention was not an arrest. Instead, the detention was an investigative stop meant to expeditiously confirm or dispel the BSO deputies' suspicions of Fertil's involvement in the theft. See United States v. Hardy, 855 F.2d 753, 758–59 (11th Cir. 1988).

Because the detention was a temporary investigative stop, it was constitutionally permissible if justified by a reasonable suspicion that Fertil was or was about to be involved in criminal activity. United States v. Smith, 201 F.3d 1317, 1322 (11th Cir. 2000). This reasonable suspicion must be based on specific, articulable facts suggesting criminal activity. Id. at 1322 n.8. The existence of a reasonable suspicion is a question of law determined by reference to the totality of the circumstances. Evans v. Stephens, 407 F.3d 1272, 1280 (11th Cir. 2005) (en banc).

In this case, Guzman argues that a reasonable suspicion of criminal activity justified his temporary detention of Fertil. DE 39 at 3. Guzman was presented with a victim who said that her telephone, which she had placed on the restroom counter, had been taken. Only one other person had been in the restroom since the victim had left her telephone there: Dumervil. Dumervil exited the restroom and exchanged something with Fertil, who immediately walked out of the office. These facts, taken as a whole, are sufficient to give rise to a reasonable suspicion that Dumervil had taken the telephone and had handed it to Fertil, who had perhaps kept or secreted the telephone.

Fertil counters with several arguments that the circumstances could not support a reasonable suspicion of criminal activity. First, Fertil argues that his mere presence at the scene of the telephone theft could not support a reasonable suspicion that he had participated in criminal activity. DE 46 at 8 (citing Wilson v. Attaway, 757 F.2d 1227, 1238 (11th Cir. 1985)). But Fertil was not merely present at the office when the telephone went missing. Instead, shortly after the telephone disappeared from the restroom, the person suspected of having taken the telephone handed something to Fertil. Facts beyond Fertil's mere presence at the doctor's office therefore support a reasonable suspicion that he had received the stolen telephone from Dumervil. See United States v. Soto-Enriquez, No. 11-462, 2012 WL 3021632 at *7 (N.D. Ga. July 24, 2012) (presence at scene, coupled with further facts suggesting criminal conduct, gave rise to reasonable suspicion of criminal activity).

Fertil also argues that the hand-to-hand exchange observed between Dumervil and Fertil could not support a reasonable suspicion of criminal activity. Fertil rightly notes that a mere hand-to-hand exchange, even in a high-crime area, will support only a "bare"—not "reasonable"—suspicion of criminal conduct where no actual contraband is observed during the exchange. DE 46 at 8–9 (citing Messer v. State, 609 So. 2d 164, 165 (Fla. 2d DCA 1992)). But again, the instant case does not involve a situation where an officer searched an individual based on a simple observation of a hand-to-hand exchange of an unknown item. Instead, Dumervil was suspected of removing a specific object from a restroom counter in a doctor's office. Immediately after leaving the restroom, Dumervil handed something to Fertil. This sequence of events gives rise to a more particularized suspicion that Fertil had received the stolen telephone from

9

Dumervil than had the two simply been observed exchanging an unidentified object on the street.

Fertil next contends that any reasonable suspicion had dissipated by the time Guzman detained him. Id. at 10. When Guzman handcuffed Fertil, both Fertil and his car had already been searched for the telephone, with no success. Fertil asserts that after the searches failed to reveal the missing telephone, any reasonable suspicion dissipated and the investigative stop should have ended. Id. (citing Jessup v. Miami-Dade Cnty., 440 F. App'x 689, 694 (11th Cir. 2011) (per curiam)).

But Jessup, the case Fertil relies upon to support his contention that suspicion of the theft had dissipated by the time Guzman handcuffed him, presents distinct facts that do not support Fertil's dissipation argument. In Jessup, a police officer stopped an individual upon suspicion of having stolen a neighbor's basketball. 440 F. App'x at 691. It soon became clear to the police that the suspect had not stolen the neighbor's basketball when the neighbor arrived at the scene holding his own basketball. Id. The Eleventh Circuit reasoned that once it was evident that no basketball had actually been stolen, "there was no further basis for suspecting any criminal activity and, thus, no lawful reason to continue any detention." Id. at 694.

In contrast, the allegedly stolen telephone in this case remained missing for the duration of Fertil's detention. Unlike in Jessup, the BSO deputies had a continuing basis to suspect that a crime had been committed: to wit, that the telephone had been stolen. The Court thus rejects Fertil's argument that any indicia of criminal activity had vanished by the time he was restrained simply because the police had been thus far unsuccessful in locating the telephone.

Fertil further asserts that even were his detention supported by reasonable suspicion of criminal activity, Guzman violated his Fourth Amendment rights by handcuffing him. A police officer may properly handcuff a suspect during an investigative stop for a number of reasons, including officer safety and preventing flight. See United States v. Fields, 178 F. App'x 890, 893–94 (11th Cir. 2006) (per curiam). However, the handcuffing must be justified by something more than a mere reasonable suspicion of criminal activity. See Harris v. Byner, No. 12-591, 2014 WL 129040 at *4 (M.D. Ala. Jan. 14, 2014), aff'd, No. 14-10656, 2014 WL 5013364 (11th Cir. Oct. 8, 2014). The use of handcuffs without anything more than a suspicion that criminal activity has occurred—unaccompanied by safety concerns or a flight risk—can turn an otherwise legal stop into an unreasonable seizure. See Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1305–06 (11th Cir. 2006).

Guzman contends that he handcuffed Fertil when Fertil became upset and demanded to leave the scene. DE 41 ¶ 19. Guzman argues that the handcuffing therefore was necessary to maintain the status quo. DE 50 at 5. But Guzman's assertion that Fertil had become agitated and sought to leave is contradicted by other facts in the record. For example, Fertil did not testify that he became agitated or sought to leave the doctor's office before he was handcuffed. Instead, Fertil testified that when he returned from the examination room to the lobby after his appointment concluded, Guzman said he had "something to tell [Fertil]." DE 27-1 at 46:19–47:9. Guzman then handcuffed Fertil and walked him out of the doctor's office. Id. Dumervil similarly testified that Guzman handcuffed Fertil not in response to Fertil's emotional state or desire to leave, but rather because he wanted take Fertil out of the doctor's office for

11

questioning. DE 27-2 at 41:10–43:23. Viewing the record in the light most favorable to Fertil, as the Court must do in addressing Guzman's Motion for Summary Judgment (see Davis, 451 F.3d at 763), the Court cannot conclude that Fertil was agitated or sought to leave before Guzman handcuffed him. The Court therefore is unable to determine at this time that Guzman's use of handcuffs was reasonable under the Fourth Amendment.

However, the reasonableness of handcuffing Fertil does not end the qualified-immunity inquiry. Even presuming that the handcuffing was unreasonable, Guzman is only stripped of qualified immunity if it would have been clear to a reasonable officer in his shoes that his conduct was unlawful. Bostic, 458 F.3d at 1306. It is clear that conduct is unlawful "if the preexisting law dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiff['s] federal rights in the circumstances." Evans, 407 F.3d at 1282 (internal quotation marks omitted).

In 2006, the Eleventh Circuit wrote in the context of a Section 1983 suit arising out of an allegedly wrongful handcuffing: "[W]e cannot locate a case addressing before today when it may be reasonable to use handcuffs in an investigatory stop absent a safety rationale." Bostic, 458 F.3d at 1306. Nor does Bostic, involving distinguishable circumstances in which an officer punitively handcuffed a child, clarify precisely when a police officer may handcuff a suspect during an investigative stop. Fertil has not provided to the Court—and the Court has not itself located—factually similar caselaw that would have put Guzman on notice that his use of handcuffs for his brief detention of Fertil during the investigation of a reported theft was objectively unreasonable for Fourth

12

Amendment purposes. The Court thus finds that it was not clearly established at the time of the investigative stop that the handcuffing violated Fertil's Fourth Amendment rights. See id. at 1306; Jackson, 206 F.3d at 1165 ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." (quoting Pickens v. Hollowell, 59 F.3d 1203, 1206 (11th Cir. 1995))).

It is true that "[e]ven in the absence of factually similar case law, an official can have fair warning that his conduct is unconstitutional when the constitutional violation is obvious, sometimes referred to as 'obvious clarity.'" Bostic, 458 F.3d at 1306. For example, despite the absence of similar caselaw, the Eleventh Circuit in Bostic held that it was obvious that a police officer's handcuffing of "a compliant, nine-year-old girl for the sole purpose of punishing her" was an obvious violation of the girl's Fourth Amendment rights. Id. at 1307. The Bostic court also illustrated by way of example other outrageous circumstances in which a constitutional violation would be obvious to a law enforcement officer, such as when an officer forcefully performs a body cavity search without justification, or applies pepper spray to a suspect who is already handcuffed and secured in the back seat of a patrol car. Id. (collecting cases).

In contrast, Guzman handcuffed Fertil during a temporary investigative stop justified by a reasonable suspicion of criminal activity. Guzman handcuffed Fertil without the use of force. Fertil does not allege that Guzman mistreated or abused him during this time, aside from the fact of the handcuffing and detention. Fertil was then released a relatively short time later when he maintained that he did not have the telephone. In the absence of caselaw directly on point regarding when a police officer may handcuff a suspect during an investigative stop, Guzman's decision to handcuff Fertil during the

13

search for the missing telephone, without the use of force and for a limited time, did not lie "well beyond the 'hazy border' that sometimes separates lawful conduct from unlawful conduct" and "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent." See id. (quoting Evans, 407 F.3d at 1283, and Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir. 2002)). In other words, any constitutional violation was not so obviously clear that Guzman should be stripped of his qualified immunity.

Guzman's investigatory stop of Fertil was justified by a reasonable suspicion of criminal activity. Though Guzman's decision to handcuff Fertil may have been unreasonable under the Fourth Amendment, it was not so obviously unlawful as to deprive Guzman of qualified immunity. Therefore, Guzman enjoys qualified immunity from Fertil's Section 1983 claim, and the Court will grant Guzman's motion for summary judgment as it pertains to that claim.

### B. Guzman Is Statutorily Immune from Fertil's False Arrest or Imprisonment Claim

Guzman also moves for summary judgment on Fertil's false arrest or imprisonment claim against him under Florida law, arguing that he is protected by statutory immunity. Section 768.28(9)(a) of Florida's Statutes provides in pertinent part: "No officer, employee, or agent of the state or any of its subdivisions shall be held personally liable in tort . . . as a result of any act . . . in the scope of . . . his employment . . . unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Guzman was acting within the scope of his employment with the BSO at the time of the detention giving rise to Fertil's claims. Compl. ¶ 53. The

14

record is devoid of any evidence of malice, bad faith (which approximates an actual-malice standard, see Drudge v. City of Kissimmee, 581 F. Supp. 2d 1176, 1195 (M.D. Fla. 2008)), or wanton or willful disregard for human rights, safety, or property. Accordingly, Section 768.28(9)(a) precludes Fertil's claim of false arrest or imprisonment against Guzman.

### C. Issues of Fact Remain with Regard to Fertil's Claim Against Floyd

Fertil alleges that Floyd violated his Fourth Amendment rights when she subjected him to a pat-down search in the absence of a reasonable suspicion that he was engaged in criminal activity or was armed and dangerous. See Compl. ¶¶ 38–39. In Floyd's motion seeking summary judgment, she counters that she asked Fertil for consent to be searched before patting him down, and Fertil agreed. DE 40 at 3; DE 41 ¶ 9. Floyd argues that because Fertil consented to be searched, he cannot complain that the subsequent search violated his rights. DE 40 at 3–4 (citing United States v. Bentley, 151 F. App'x 824, 828 (11th Cir. 2005) (per curiam)). But at his deposition, Fertil testified that Floyd did not seek his consent before searching him, nor did he ever indicate consent. DE 27-1 at 44:9–45:19. The issue of whether Fertil consented to a search by Floyd thus is in dispute, and summary judgment on the issue of consent is inappropriate.[2]

---

[2] Floyd also argues that she should not be liable to Fertil because Guzman was the lead deputy at the doctor's office, and Guzman made the decision to detain Fertil. DE 40 at 2–3. It is true that an officer following a superior's orders is in some circumstances insulated from liability by qualified immunity. See Rauen v. City of Miami, No. 06-21182, 2007 WL 686609 at *20 (S.D. Fla. Mar. 2, 2007). However, Fertil's claim against Floyd is premised largely upon her pat-down search of Fertil. See Compl. ¶ 39. Floyd does not argue that Guzman directed her to perform this pat-down search. See DE 40 at 2 ("The undisputed evidence confirms that aside from her consented-to pat-down search of Plaintiff Deputy Floyd had no role in determining, causing, or effecting Plaintiff's investigatory detention." (footnote omitted)). Therefore, that Floyd may have

15

### D. The BSO Is Entitled to Judgment of Fertil's False Arrest or Imprisonment Claim

Fertil also asserts a single claim for false arrest or imprisonment against the BSO, based on his assertion that the detention by Guzman, a BSO deputy, was not justified by probable cause or a reasonable suspicion of criminal activity. See generally Compl. ¶¶ 49–55. The BSO counters that the detention was justified by a reasonable suspicion of criminal activity, thus cannot support a claim. Florida law allows a law-enforcement officer such as Guzman to temporarily detain a person upon a reasonable suspicion of criminal activity. See Fla. Stat. § 901.151. The lawfulness of a detention is a defense to a false arrest or imprisonment claim. See Holcy v. Flagler Cnty. Sheriff, No. 05-1324, 2007 WL 2669219 at *7 (M.D. Fla. Sept. 6, 2007) (citing Johnson v. Barnes & Noble Booksellers, Inc., 437 F.3d 1112, 1116 (11th Cir. 2006)). As discussed supra pp. 6–9, the Court has determined that Guzman's temporary detention of Fertil was justified by a reasonable suspicion of criminal activity. Accordingly, Fertil's false arrest or imprisonment claim against the BSO fails as a matter of law. See Holcy, 2007 WL 2669219 at *7.[3]

## IV. CONCLUSION

In sum, Guzman and the BSO entitled to summary judgment on Fertil's claims against them. Qualified and statutory immunity precludes Fertil's claims against

---

followed certain of Guzman's orders does not impact Fertil's claim against her to the extent the claim is premised upon the pat-down.

[3] The Court notes that Fertil premises his false arrest or imprisonment claim against the BSO solely upon the argument that his detention was not justified by the necessary probable cause or reasonable suspicion of criminal activity. See Compl. ¶¶ 50–51. Therefore, the Court does not consider Fertil's assertion that he was unnecessarily handcuffed in resolving the lawfulness of his detention as it relates to his claim against the BSO.

Guzman. On the other hand, Fertil's claim for false arrest or imprisonment against the BSO fails because his detention was justified by a reasonable suspicion of criminal activity. Because the Court has determined that Guzman and the BSO are entitled to summary judgment on Fertil's claims against them, the Court will also deny Fertil's motion for summary judgment, which pertains solely to his claims against Guzman and the BSO. See DE 23. However, Fertil may proceed on his suit with respect to Floyd, whose argument for summary judgment on the issue of consent fails in the face of disputed issues of fact. It is accordingly

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment [DE 23] is **DENIED**;
2. Defendant Scott J. Israel's Corrected Motion for Summary Judgment [DE 38] is **GRANTED**;
3. Defendant Henry Guzman's Corrected Motion for Summary Judgment [DE 39] is **GRANTED**; and
4. Defendant Kami Floyd's Corrected Motion for Summary Judgment [DE 40] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 31st day of October, 2014.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF